**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**COURTNEY ADAMS,**

       **Plaintiff,**

v.                                                                    Case No: 6:23-cv-243-PGB-DCI

**LASHIFY, INC.,**

       **Defendant.**
_____/

## ORDER

This cause comes before the Court on Defendant's Motion to Compel Arbitration and Stay the Case (Doc. 25 (the "**Motion**")) and Plaintiff's response in opposition (Doc. 30). Upon due consideration, the Motion is granted.

**I.  BACKGROUND**

This dispute stems from allegedly unwanted telephone solicitations. (Doc. 1-1). Defendant is an online retailer of eyelash extension products. (Doc. 25-1, p. 2). Plaintiff purchased products from Defendants on six separate occasions. (*Id.* at p. 4). As part of this purchase process, Plaintiff encountered a screen substantially similar to the following:



(*Id.* at p. 3). A purchase cannot be made without clicking the "CHECKOUT" button. (*Id.* at p. 4). If the "Terms of Use" link is clicked on, a written offer of terms (the "**Internet Agreement**" or "**Terms of Use**") governing the interaction appears in a potential purchaser's browser. (*Id.* at pp. 27–45). Contained therein is the following arbitration clause:

> Notwithstanding any contrary provision of these Terms, all disputes, claims, controversies and matters relating to or in connection with these Terms (or the breach thereof) or any transactions hereunder shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules ("AAA Rules"), and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The arbitration shall take place in New York, New York before a single neutral arbitrator appointed in accordance with the AAA Rules and shall be conducted in the English language. All arbitrations shall be conducted and resolved on an individual basis and not a class-wide, multiple plaintiff or similar basis. No arbitration shall be consolidated with any other arbitration proceeding involving any other person or entity.

(*Id.* at p. 39).

After allegedly receiving unwanted telephonic sales calls, Plaintiff brought this action in Florida state court alleging violations of the Florida Telephone Solicitation Act on behalf of herself and all others similarly situated. (Doc. 1-1). Defendant promptly removed the case to this Court. (Doc. 1). Within a month, Defendant moved to compel arbitration and stay the case. (Doc. 19). Plaintiff filed an amended complaint which mooted this initial motion to compel. (Doc. 21, 24). Defendant again requested an order to compel arbitration and stay the case.[1] (Doc.

---

[1] In the meantime, Plaintiff filed a motion to remand to state court a day later, arguing the Court lacked subject matter jurisdiction. (Doc. 26). Defendant requested the Court grant a stay in

25). Plaintiff later timely responded in opposition to the Motion. (Doc. 30). As such, this matter is now ripe for review.

## II. STANDARD OF REVIEW

The Federal Arbitration Act (the "**FAA**") provides that a written arbitration agreement in any contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The existence of a valid arbitration agreement is a threshold issue for determining the propriety of a motion to compel arbitration. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). If the Court finds that no arbitration agreement exists, the Court "cannot compel the parties to settle their dispute in an arbitral forum." *Id.*

When a party moves to compel arbitration, the FAA states that "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue . . . shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (emphasis added). The determination of whether parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Generally, this determination requires the district court to apply

---

light of an Eleventh Circuit case that would settle whether the Court could exercise jurisdiction over the case. (Doc. 33). The Court granted this motion and stayed the case. (Doc. 35). The Eleventh Circuit ruled and confirmed the Court's jurisdiction. (Doc. 37). Plaintiff accordingly withdrew its motion to remand. (Doc. 38).

4

standard principles of state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939 (1995); *see also P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003); *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1152–56 (Fla. 2014).

A motion to compel arbitration is generally treated as a motion to dismiss for subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007); *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1222 (M.D. Fla. 2013). Motions to dismiss based on subject matter jurisdiction come in two forms: facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). A facial attack looks to the four corners of the complaint and those related exhibits properly under consideration before the Court to consider whether subject matter jurisdiction is sufficiently alleged. *Id.* at 1529. The allegations of the Complaint are accepted as true for purposes of such a motion. *Id.* In contrast, a factual attack relies on matters outside the pleadings, such as testimony or affidavits. *Id.*

When a factual attack is employed, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court for evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)); *Bryant v. Rich*, 530 F.3d 1368, 1373–74 (11th Cir. 2008) (noting "the district judge did not err by acting as a factfinder in resolving [a] factual

dispute" relating to jurisdiction). As here, motions to compel arbitration are generally treated as a factual attack because they require reliance on an extrinsic document which might deprive a court of its power to adjudicate a plaintiff's claim. *Mason v. Coastal Credit, LLC*, No. 3:18-cv-835, 2018 WL 6620684, at *5 (M.D. Fla. Nov. 16, 2018).

### III.  DISCUSSION

In moving to compel arbitration, Defendant points the Court to several affidavits and extrinsic documents the factual veracity of which Plaintiff does not reasonably challenge. (Docs. 25-1, 25-2). Based on these documents, the Court finds the parties must arbitrate Plaintiff's claims pursuant to the Internet Agreement.

The FAA provides a federal "policy favoring arbitration." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). But "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id.* (citation omitted). Under both federal and Florida law, a party has a right to arbitrate where: (1) a valid, written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived. *Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004); *Marine Envt'l. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003); *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla.

1999). Plaintiff incorrectly argues Defendant has no right to arbitrate this dispute by challenging all three of these prongs. (Doc. 30, pp. 6–16).[2]

### A.   Agreement to Arbitrate

Federal courts "apply ordinary state-law principles that govern the formation of contracts" to determine whether there is a valid agreement to arbitrate under the FAA.[3] [4] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In Florida, an enforceable contract requires offer, acceptance, consideration, and sufficient specification of essential terms. *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). Consequently, courts must first decide whether there were formation challenges "to the contract containing the arbitration clause." *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 990 (11th Cir. 2012). After all, a party plainly cannot be bound by an arbitration clause of a proffered contract to which it does not assent. *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 46 (2014) (citations omitted). Formation requires "mutual assent to certain and definite contractual terms. Without a meeting of the

---

[2]  In addition, Plaintiff initially argued the Court should remand the case due to lack of subject matter jurisdiction but withdrew this argument. (Doc. 38).

[3]  Plaintiff does not dispute that Florida law governs the contract formation issue, so the Court need not address any potential choice of law issues. (Doc. 30 (citing Florida state law cases)).

[4]  In construing arbitration agreements, courts apply state law principles relating to contract formation, interpretation, and enforceability. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). "The party seeking enforcement of an agreement has the burden of establishing that an enforceable agreement exists." *CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. 1st DCA 2019); *Palm Garden of Healthcare Holdings, LLC v. Haydu*, 209 So. 3d 636, 638 (Fla. 5th DCA 2017).

minds on all essential terms, no enforceable contract arises." *Matter of T&B Gen. Contracting, Inc.*, 833 F.2d 1455, 1459 (11th Cir. 1987) (citations omitted).

In the online context, Florida courts have recognized two main types of internet contracts:

> (1) clickwrap agreements: when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions; and (2) browserwrap agreements: when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process. The purchaser can complete the transaction without visiting the page containing the terms and conditions.

*Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp. 3d 1252, 1259 (S.D. Fla. 2021) (citations and quotations omitted). "The defining feature of browserwrap agreements is that the user can continue to use the website or its services without visiting the page hosting the terms of the browserwrap agreement or even knowing that such a webpage exists." *Id.* (cleaned up). Because the boundary between the two types of internet contracts is not always clearcut, the Court will assume without deciding that the Internet Agreement was a browserwrap agreement; nowhere is Plaintiff required to click to confirm their agreement with the terms although users must press the "CHCKOUT" button.[5] (Doc. 25-1, p. 3; Doc. 30, p. 8).

Under Florida law, a browserwrap agreement is enforceable "when the purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent

---

[5] Regardless, the Court would reach the same result if the Internet Agreement was deemed a clickwrap agreement.

8

person on inquiry notice." *Fridman*, 554 F. Supp. 3d at 1260 (citation omitted). In other words, even without actual notice, Plaintiff may have had constructive notice of the Internet Agreement's Terms of Use. This is important because Plaintiff nowhere contests that the Terms of Use of the Internet Agreement contain an arbitration clause. (*See* Doc. 30, pp. 7–9). Instead, Plaintiff argues that the Internet Agreement, as conveyed through the website, did not provide sufficient inquiry notice to constitute a meeting of the minds. (*See id.*).

"The validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Fridman*, 554 F. Supp. 3d at 1260 (citation omitted and cleaned up). "Whether a reasonably prudent user is put on inquiry notice turns on the clarity and conspicuousness of the terms." *Id.* "In the context of web-based contracts, clarity and conspicuousness are a function of the design and content of the relevant interface." *Id.*

Plaintiff narrowly focuses on the link to the Internet Agreement's Terms of Use, pointing out font characteristics and stating the relevant hyperlinked text does not contrast sufficiently with the rest of the website.[6] (Doc. 30, p. 8). Again, the relevant interface appears as follows:

---

[6] Plaintiff cites an additional inapplicable case which notes that because the arbitration agreement there was a collateral document not specifically mentioned as incorporated into the relevant terms and conditions, there was not sufficient inquiry notice. *Goldstein v. Fandango Media, LLC*, No. 9:21-cv-80466, 2021 WL 6617447, at *4 (S.D. Fla. July 27, 2021). This case is inapposite because the arbitration clause in the Internet Agreement's Terms of Use is not an incorporated collateral agreement; it is a specific enumerated term within the Internet Agreement. (*See* Doc. 25-1, p. 39).



(Doc. 25-1, p. 3). While the hyper-linked text pertaining to the Internet Agreement's Terms of Use could have been bolder and larger, the Court finds critical the text's prominent placement proximately atop and contrasting with the dark "CHECKOUT" button. This differs from the facts in *Fridman* where the link to the terms and conditions was buried at the bottom of the website in addition to appearing in smaller, less prominent font. 554 F. Supp. 3d at 1262–63. Unlike there, a reasonably prudent user would here find this text sufficiently conspicuous to be on notice that they were agreeing to Defendant's Terms of Use by clicking the "CHECKOUT" button, and Plaintiff did so at least six times.[7] (*Id.* at p. 4). Accordingly, Plaintiff is subject to the valid, written Internet Agreement and its associated arbitration clause.

## B.    Arbitrable Issue

To the extent the Court should decide the issue rather than an arbitrator, the Court finds an arbitrable issue exists under the parties' Internet Agreement—namely whether Defendant violated the Florida Telephone Solicitation Act.[8] (*See* Doc. 1).

---

[7]  Plaintiff nowhere disputes Defendant's secondary argument that Plaintiff also agreed to the Internet Agreement and its Terms and Conditions when she signed up for an email and text messaging list to receive discounts from Defendant. (Doc. 25-1, pp. 4–9; *see* Doc. 30). At the least, the Court further concludes Plaintiff constructively was on notice of its assent to the Internet Agreement through this process as well.

[8]  The Court doubts it is the proper institution to decide this question as the parties Internet Agreement appears on its face to allocate the issue of arbitrability to an arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that arbitration agreement applies to a

11

**C.     Waiver**

Even if the Internet Agreement is binding, Plaintiff argues Defendant waived its right to arbitrate. (Doc. 30, pp. 10–12). "The Courts of Appeals . . . have generally resolved cases like this one as a matter of federal law, using the terminology of waiver." *Morgan*, 142 S. Ct. at 1712. Waiver "is the intentional relinquishment or abandonment of a known right," and the waiver analysis "focuses on the actions of the person who held the right." *Id.* at 1712–14 (citations and quotations omitted). Section 6 of the FAA "is a bar on using custom-made rules, to tilt the playing field in favor of (or against) arbitration," including waiver. *Id.* (holding federal courts cannot "create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's policy favoring arbitration"). Waiver may be explicit if a party makes a specific statement of his intent to waive a right, or it may be implied through conduct and such conduct "must make out a clear case." *Air Prod. & Chem., Inc. v. La. Land & Exploration Co.*, 867 F.2d 1376, 1379 (11th Cir. 1989).

The Supreme Court in *Morgan* abrogated much of the Eleventh Circuit's prior precedent on waiver of arbitration agreements. 142 S. Ct. at 1713–14 (abrogating *S&H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514

---

particular dispute is wholly groundless."); (Doc. 25-1, p. 39 (noting arbitration to be "administered by the American Arbitration Association under its Commercial Arbitration Rules"); Doc. 25-2, pp. 16–17 (American Arbitration Association rules note that "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court.")).

(11th Cir. 1990)). Under this precedent, waiver occurred only when (1) "under the totality of the circumstances, the party has acted inconsistently with the arbitration right," and (2) the party's conduct "has in some way prejudiced the other party." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018) (internal citation omitted). Additionally, the Eleventh Circuit imposed "a heavy burden" on any party arguing waiver of arbitration "because federal law favors arbitration." *Id.* (quoting *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990)). In *Morgan*, the Supreme Court clearly struck down both the prejudice and burden-of-proof requirements, since both are arbitration-specific rules justified by the "policy favoring arbitration." *See Stone*, 898 F.2d at 1543; *S&H Contractors*, 906 F.2d at 1514.

This potentially leaves only the first prong of the waiver test: a court must determine whether a party has acted inconsistently with the arbitration right by "substantially participat[ing]" in the litigation based on the totality of the circumstances. *Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995). However, the Eleventh Circuit previously formulated the standard of "substantial participation" by putting a thumb on the scale in favor of arbitration–the approach the Supreme Court expressly disclaimed in *Morgan. Id.*; *see also S&H Contractors*, 906 F.2d at 1514. What is more, courts in the Eleventh Circuit do not apply a "substantial participation" standard for other contractual rights that may be waived by participation in litigation. *See e.g.*, *CMR Constr. & Roofing, LLC v. Empire Indem.*

13

*Ins. Co.*, 843 F. App'x. 189, 193 (11th Cir. 2021) (finding waiver of appraisal rights where defendants "actively participated" without a requirement that the participation be substantial); *Chmura v. Monaco Coach Corp.*, No. 8:04-cv-2054, 2005 WL 1705469, at *2 (M.D. Fla. July 19, 2005) (finding waiver of forum selection clause after participation in litigation in improper forum). Under *Morgan*, such a heightened standard for considering waiver appears now to be impermissible: under the national "policy favoring arbitration," courts may only "place [arbitration] agreements upon the same footing as other contracts," including with regard to waiver. *Morgan*, 142 S. Ct. at 1713 (citing *Granite Rock Co.*, 561 U.S. at 302). Thus, arbitrability waiver should now be evaluated under the same standard set by the applicable state law governing other contract waiver issues. *See Morgan*, 142 S. Ct. at 1713.

Coincidentally, though, the Florida state law standard is somewhat similar to the abrogated Eleventh Circuit standard. Under Florida law "[a] party's contract right may be waived by actively participating in a lawsuit or taking action inconsistent with that right." *Klosters Rederi A/S v. Arison Shipping Co.*, 280 So. 2d 678, 681 (Fla. 1973). This determination is made by evaluating the totality of the circumstances, but "the question of whether there has been waiver in the arbitration agreement context should be analyzed in much the same way as in any other contractual context." *Green Tree Servicing, LLC v. McLeod*, 15 So. 3d 682, 687 (Fla. 2d DCA 2009) (citations and quotations omitted); *see also Raymond James Fin. Services, Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005). Under

14

Florida state law, it is well-settled that "prosecution or defense of a lawsuit on issues subject to arbitration" – that is, merits issues – waives the claimed right to arbitrate. *Seville Condo. No. One, Inc. v. Clearwater Dev. Corp.*, 340 So.2d 1243, 1245 (Fla. 2d DCA 1976). And the same goes for filing an answer to a pleading seeking affirmative relief without raising the right to arbitration, *Bared & Co. v. Specialty Maint. & Constr., Inc.*, 610 So. 2d 1, 3 (Fla. 2d DCA 1992), or "moving for summary judgment." *Lapidus v. Arlen Beach Condo. Ass'n*, 394 So. 2d 1102, 1103 (Fla. 3d DCA 1981). For obvious reasons, Florida state courts do not opine on whether removal by itself constitutes active participation in a suit sufficient to waive arbitration, but at least one Florida court implicitly noted that a case that was removed *and then remanded* required something more—such as participation in discovery on the merits—to constitute waiver of a claimed right to arbitrate. *See Green Tree*, 15 So. 3d at 684–87.

Here, Defendant timely removed this case to federal court and brought a motion to compel arbitration within a month without engaging in any other litigation practice beforehand.[9] Consequently, the Court finds that the totality of the circumstances indicate Defendant never actively participated in the lawsuit or in a manner inconsistent with its asserted right to arbitrate the case. Strangely,

---

[9] The Court does not count the subsequent litigation against Defendant in this instance as they involved taking actions to arbitrate or defending procedurally against Plaintiff's litigation tactics: Plaintiff requested remand or a stay in lieu of a relevant appellate case and Defendant responded; Defendant renewed the motion to compel arbitration after the lifting of the stay; and Defendant objected to Plaintiff's discovery requests citing arbitration as a reason. (Docs. 19, 25, 34, 40, 40-2).

15

Plaintiff nevertheless appears to argue this Court should apply a "removal equals waiver of arbitration rights" bright-line rule. (Doc. 30, p. 13 ("Defendant chose to invoke the judicial process of this Court through removal. This amounts to waiver.")). But Florida caselaw belies such an approach; removal by itself is not automatically enough.[10] Consequently, the Court finds that Defendant has not actively participated in the suit or acted inconsistently with its rights under the parties' Internet Agreement, and the parties must proceed to arbitration pursuant to it.

---

[10] Even the cases which Plaintiff cites do not counsel such a simplistic rule. (*See* Doc. 30, pp. 10–12). For example, Plaintiff selectively quotes Magistrate Judge Baker's reasoning in *Gaudreau v. My Pillow, Inc.*, No. 6:21-cv-1899, 2022 WL 3098950, at *8 (M.D. Fla. July 1, 2022) to support the proposition that, "Defendant chose to invoke the judicial process of this Court through removal. This amounts to waiver." (Doc. 30, p. 11). Specifically, Plaintiff cites Judge Baker's reasoning that, "MyPillow acted inconsistently with its purported right to arbitrate. Rather than compel arbitration in state court, MyPillow chose to remove the case to this Court." *Gaudreau*, 2022 WL 3098950, at *8; (Doc. 30, p. 11). Plaintiff omits, however, that Magistrate Judge Baker went on immediately afterwards to state that, "It also answered not one, but two complaints filed by Guadreau against it without mentioning its purported right to arbitrate. Further, MyPillow only sought to vindicate its purported right to arbitrate after actively participating in this litigation for eight months." *Gaudreau*, 2022 WL 3098950, at *8; (Doc. 30, p. 11). In other words, Plaintiff overlooks that Magistrate Judge Baker considered significant the contextual factors of the litigation tactics employed and the time spent litigating before an assertion of the right to arbitrate. *Id.* Removal alone was not by itself enough to constitute waiver. *See id.*

The same goes for Plaintiff's citation of *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). (Doc. 30, pp. 11–12). There, the Seventh Circuit held that removal itself creates a rebuttable presumption of active participation sufficient to constitute waiver of arbitration rights. *Id.* This is somewhat relevant to the analysis because the Seventh Circuit uses a similar "equal treatment" approach to the one employed by Florida courts to analyze waiver of arbitration rights. Even in the Seventh Circuit, however, this presumption is rebuttable where "such an invocation does not signify an intention to proceed in a court to the exclusion of arbitration." *Id.* In determining whether this presumption is rebutted, the Seventh Circuit advises courts to consider factors such as the diligence seeking arbitration and any prejudice to the party resisting arbitration. *Id.* at 391. While this approach is not entirely inconsistent with Florida state law, the Court finds it does not govern this case. In any event, this approach is not as straightforward as a bright-line rule.

## IV. CONCLUSION

It is therefore **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Compel Arbitration and Stay the Case (Doc. 25) is **GRANTED**. The parties shall proceed to arbitration in accordance with the terms of their Internet Agreement.

2. The proceedings are hereby **STAYED** and the Clerk of Court is **DIRECTED** to administratively close the file. The Court retains jurisdiction of the case to adjudicate any post-arbitration motions the parties may make.

3. The parties are **DIRECTED** to file status updates regarding the pendency of the arbitration proceedings on or before December 29, 2023 and every 120 days thereafter.

**DONE AND ORDERED** in Orlando, Florida on August 29, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties